AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Gabriel FLORICA, | ) | Case No. 12-8403-DLB |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 8, 2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(2)(B)(ii) | Alien Smuggling for the purpose of commercial advantage and private financial gain. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

HSI Special Agent David DiConza
Printed name and title

Sworn to before me and signed in my presence.

Date: 10/12/2012

_____
Judge's signature

City and state: West Palm Beach, Florida

U.S. Magistrate Judge Dave Lee Brannon
Printed name and title

## AFFIDAVIT

I, David DiConza, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Department of Homeland Security / Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and have been so employed for two years. Your affiant is assigned to the HSI Office located in West Palm Beach, Florida. As a Special Agent with HSI, I have received training in federal laws relating to the offenses under Title 8 and Title 18 of the United States Code. My duties and responsibilities as a Special Agent with HSI include investigating maritime smuggling matters and enforcing the immigration laws of the United States.

2. The information contained in this affidavit is based upon my own knowledge as well as information provided to me by other law enforcement officers. This affidavit does not set forth every fact known to me regarding this investigation but only those facts necessary to establish probable cause to charges.

3. On October 8, 2012, at approximately 7:30 pm, a Customs and Border Protection ("CBP") air asset began to track a vessel traveling in a westerly direction toward the Palm Beach County Shoreline. Information regarding the vessel's location was provided to CBP marine assets.

4. On October 8, 2012, at approximately 9:05 pm, CBP Marine Units activated their blue lights and ordered the boat operator to stop the vessel. The boat operator, who was later identified as Gabriel FLORICA, complied with the commands and stopped the vessel. This interdiction took place approximately 12 nautical miles off the Palm Beach County shoreline between the Lake Worth Inlet and the Boynton Beach Inlet. Marine Interdiction Agents boarded the vessel and located in addition to the boat operator twelve

1

(12) individuals. Two (2) individuals were on boat's deck with Gabriel FLORICA. Ten (10) individuals were located inside the boat cabin. CBP Officers also located a GPS Device on the boat and $301 in U.S. currency on Gabriel FLORICA's person. When asked, none of the boat's occupants were able to provide any documentation which would allow them to enter the United States. All of the boat's occupants were transferred to a U.S. Coast Guard Cutter.

5. On October 9, 2012, at approximately 4:00 pm, all of the boat's occupants were brought to the U.S. Border Patrol Station in Riviera Beach, Palm Beach County, Florida for processing and interviews. The boat's passengers were identified as (3) Brazilians, (2) Jamaicans, and (7) Haitians. One of the passengers was identified through Biometrics as Wayne OAKLEY, a Jamaican national, who had been previously deported from the United States.

6. Your affiant and HSI Special Agent Dan Richichi responded to the U.S. Border Patrol Station and conducted a post-*Miranda* interview of Gabriel FLORICA, who admitted to being a citizen of Romania. On or about November 4, 2011, Gabriel FLORICA said he flew from England to Nassau, Bahamas with the intention of being smuggled into the United States.

7. In the Bahamas, Gabriel FLORICA met an individual named "Leroy." "Leroy" offered to smuggle Gabriel FLORICA to the United States by boat for $2,000. Gabriel FLORICA agreed to have "Leroy" smuggle him into the United States by boat for $2,000. Gabriel FLORICA paid $2,000 to "Leroy," which he ("Leroy") said would be used for fuel costs. Gabriel FLORICA agreed to help "Leroy" recruit individuals wanting to be smuggled to the United States. As part of this arrangement, Gabriel

FLORICA agreed to represent or hold himself out as the boat captain for the smuggling venture. On one occasion, Gabriel FLORICA witnessed one of the boat's passengers pay "Leroy" an amount of U.S. Currency to be smuggled to the United States.

8. Prior to the instant smuggling venture, Gabriel FLORICA said he and the boat's passengers were staying in a hotel in the Bahamas. During this time, one of the boat's passengers told Gabriel FLORICA he was from Jamaica and that he had been previously deported from the United States.

9. A few days before the instant smuggling venture, "Leroy" told Gabriel FLORICA he ("Gabriel FLORICA") needed to drive the boat with the passengers to the United States. "Leroy" told Gabriel FLORICA he would not need to pay any additional money to him. Gabriel FLORICA agreed to do this. "Leroy" provided Gabriel FLORICA with a GPS Device and a piece of paper containing the coordinates on where to travel to the United States. "Leroy" also provided Gabriel FLORICA with a cell phone and a contact number for Gabriel FLORICA to call when he was close to the U.S. shoreline. "Leroy" would provide Gabriel FLORICA with instructions on where to go with the boat at that time. "Leroy" also gave $301 to Gabriel FLORICA to help him (Gabriel FLORICA) make his way to California. "Leroy" showed Gabriel FLORICA how to use the GPS device and operate the boat.

10. "Leroy" and Gabriel FLORICA traveled in the boat to an area where they picked up the passengers. Gabriel FLORICA said a total of twelve (12) passengers got on the boat. "Leroy" got off the boat and Gabriel FLORICA along with the boat's passengers began their travel to the United States.

11. Initially, Gabriel FLORICA told all of the passengers to go inside the cabin. However, because the cabin had too many people, Gabriel FLORICA instructed the Brazilians to get out of the cabin and sit on the deck. Gabriel FLORICA explained he had the Brazilians sit on the deck because he thought it would look less suspicious.

12. Based upon the foregoing, your affiant believes that there is probable cause to charge Gabriel FLORICA with violating Title 8, United States Code, Section 1324(a)(2)(B)(ii).

FURTHER AFFIANT SAYETH NAUGHT

_____
HSI Special Agent David DiConza

Sworn to and subscribed before me
this 12th day of October 2012
in West Palm Beach, Florida

_____
HONORABLE DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.   12-8403-DLB

UNITED STATES OF AMERICA

vs.

GABRIEL FLORICA,

**Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   _____ Yes  __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes  __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
WILLIAM ZLOCH
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0105619
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401-6235
Tel:  (561) 209-1022
Fax: (561) 820-8777
William.Zloch@usdoj.gov